# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **VIRGINIA L. WILLEVER,** *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No.: RWT 09cv3072 |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Defendant. | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiff Virginia Willever and her children (collectively the "Willevers") brought this Federal Tort Claims Act action in 2009, alleging that the death of Virginia Willever's husband, Captain Edward Willever, was the result of the negligence of the staff of the National Naval Medical Center ("NNMC"). Three days before the conclusion of discovery, which included the depositions of experts for both sides, the Willevers moved for partial summary judgment on the issue of liability, arguing that the United States is precluded from contesting liability because it failed to file a certificate and report of a qualified expert with the Maryland Health Care Alternative Dispute Resolution Office, as required by the Maryland Health Care Malpractice Claims Act ("HCMCA"). The issue was fully briefed and the Court held a hearing on January 3, 2011. For the reasons stated below, the Willevers' motion will be denied.

## BACKGROUND FACTS

Captain Edward Willever underwent a four-vessel bypass surgery and left lower lung partial resection at the NNMC in Bethesda, Maryland on May 13, 2008. Compl. ¶ 13. Captain Willever was a fully monitored patient in the Cardiac step unit on May 17, 2008. *Id.* ¶ 14. At 5:13 a.m. that day, Captain Willever was apparently in normal sinus rhythm. *Id.* However, at 5:30 a.m., Captain Willever was found on the floor of his room in full cardiac arrest.

*Id.* Captain Willever was apparently off his cardiac monitor for at least seventeen minutes without "an appropriate response by the medical staff." *Id.* Captain Willever was resuscitated after his cardiac arrest, but died on May 18, 2008. The Willevers claim that the medical staff's failure to investigate Captain Willever's status for the seventeen minutes between 5:13 and 5:30 a.m. was negligent and caused his death. *Id.* ¶ 16. The United States contests liability in this action, and asserts that NNMC employees did not deviate from standards of care in Captain Willever's treatment and that any deviation from standards of care did not cause Captain Willever's death. Def.'s Answer, ECF No. 6.

## **PROCEDURAL HISTORY**

On January 6, 2009, Virginia Willever filed an administrative claim with the Department of the Navy pursuant to 28 U.S.C. §§ 2401(b)[1] and 2675.[2] Compl. ¶ 3. The Department of the Navy did not make a final disposition of her claim within six months of its filing, and Virginia Willever chose to deem this inaction to be a final denial of her claim, pursuant to 28 U.S.C. § 2675. *Id.* ¶ 4.

On October 16, 2009, the Willevers filed with the Maryland Health Care Alternative Dispute Resolution Office (the "Office") a Certificate of Qualified Expert and attached report, wherein the Willevers' expert opined that NNMC employees' deviations from standards of care

---

[1] 28 U.S.C. § 2401(b ) provides, "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

[2] 28 U.S.C. § 2675(a) provides, "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

caused Captain Willever's death. Pls.' Mot. for Summ. Judg., Ex. 1-3. The Willevers simultaneously filed an election of waiver of arbitration and both the waiver and the certificate with attached report were served on the United States on November 6, 2009. *Id.* Ex. 4. The Office entered an order transferring this action to this Court on October 28, 2009. *Id.* Ex. 5.

On November 17, 2009, Virginia Willever, Captain Willever's widow, filed a two count complaint in this Court on behalf of herself and her children against the United States under the Federal Tort Claims Act. ECF No. 1. The complaint was served on the United States on the same day. Count I asserts a wrongful death claim while Count II asserts a survival action and seeks compensatory damages for Captain Willever's conscious pain and suffering, anxiety and fright prior to death, together with reimbursement for medical and funeral expenses and lost income. *Id.* at 6-7.

On January 28, 2010, the United States answered the complaint. ECF No. 6. The Court issued a scheduling order on February 1, 2010, which set a deadline of April 2, 2010 for the disclosure of the Willevers' Rule 26(a)(2) experts, and a deadline of May 3, 2010 for the disclosure of the United States' Rule 26(a)(2) experts. ECF No. 7. On February 25, 2010, the Court modified the Scheduling Order such that the Willevers' expert disclosures were due on May 20, 2010, and the United States' Rule 26(a)(2) expert disclosures were due on July 20, 2010. ECF No. 13.

The United States never filed a certificate of a qualified expert with attached report with the Office attesting to NNMC employees' compliance with standards of care, or attesting that any departure from standards of care was not the proximate cause of Captain Willever's death. However, the parties filed their expert reports consistent with the Amended Scheduling Order,

and proceeded to depose each others' experts.  *See* Consent Motion to Amend Scheduling Order, at 1.  ECF No. 21.  Discovery concluded on November 1, 2010.

According to the Willevers' calculations, the United States' certificate and report of a qualified expert were due to be filed on March 6, 2010, 120 days following service of the Willevers' certificate and report on the United States.  Pls.' Mot. for Summ. Judg. at 3.  As a result, the Willevers contend that they are entitled to partial summary judgment on the issue of liability due to the United States' failure to file an expert certificate and report with the Maryland Health Care Alternative Dispute Resolution Office.  ECF No. 28.

## ANALYSIS

### I.

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.s. at 248-49.  However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore*

*Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings,  in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial."  *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24).  When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (emphasis added).

## II.

The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit."  *United States v. Testan*, 424 U.S. 392, 399 (1976) (citing *United States v. Sherwood*, 312 U.S. 584 (1941)).  "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  *U.S. v. Orleans*, 425 U.S. 807, 814 (1976).  The Federal Tort Claims Act ("FTCA") is to be narrowly construed against waivers of sovereign immunity.  *Id.* at 813-14.

Pursuant to 28 U.S.C. § 1346(b)(1):

> the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have *exclusive jurisdiction* of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission occurred.

(Emphasis added).

Under the FTCA, "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . " 28 U.S.C. § 2674. Claims for wrongful death as a result of the medical malpractice of a United States government employee can therefore be brought under the FTCA.

As a condition precedent to bringing a tort claim against the United States under the FTCA, a plaintiff must first submit his claim to the appropriate federal agency and engage in a federal administrative claims procedure. *See* 28 U.S.C. § 2675. Only after the federal agency has denied the claim, or after six months have elapsed since the filing of the claim, can a claimant bring an FTCA suit in federal court. *Id.*

The Maryland Health Care Malpractice Claims Act ("HCMCA") establishes a state administrative claims procedure relating to malpractice claims. HCMCA requires a putative plaintiff to first file any medical malpractice claim with the Director of the Maryland Health Care Alternative Dispute Resolution Office (the "Office"), an office within the Executive Branch of the State of Maryland. Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-03, 3-2A-04. The Director of the Office is appointed by the Maryland Governor with the advice and consent of the Maryland Senate, and is responsible for appointing arbitrators. *Id.* § 3-2A-03. Under HCMCA's statutory scheme, the parties must submit to arbitration before a panel consisting of an attorney, a health care provider, and a lay person. *Witte v. Azarian*, 801 A.2d 160, 166 (Md. 2002). The statutory scheme further provides that a medical malpractice lawsuit filed in either federal or state court "shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care,

and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint." *Id.* § 3-2A-04(b)(1)(i). The filing of the required certificate and report by a claimant is not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit in this Court or the Maryland state courts. *Carroll v. Konits*, 929 A.2d 19, 27 (Md. 2007), *Kearney v. Berger*, 182 Md. App. 186, 194-95 (Md. App. 2008). The purpose of the certificate and report requirements is to "weed out non-meritorious claims and assist the plaintiff or defendant in evaluating the merit of the health claim or defense." *Walzer v. Osborne*, 395 Md. 563, 583 (Md. 2006).

The HCMCA also requires a defendant to a medical malpractice action to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care was not the proximate cause of the alleged injury, within 120 days from the date the claimant served the defendant with the claimant's certificate of a qualified expert. *Id.* § 3-2A-04(b). The HCMCA provides:

> A claim or action filed after July 1, 1986, may be adjudicated in favor of the claimant or plaintiff on the issue of liability, if the defendant disputes liability and fails to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant or plaintiff served the certificate of a qualified expert . . .

*Id.* § 3-2A-04(b)(2)(i).

Defendants, like plaintiffs, are required to attach an expert report to these certificates. *Id.* § 3-2A-04(b)(3)(i). The "expert report must explain how or why the physician failed or did not fail to meet the standard of care and include some details supporting the certificate of qualified expert." *Walzer*, 395 Md. at 583. A claimant or a defendant may receive an extension of the

deadline for filing a certificate and report of a qualified expert "for good cause shown." *Id.* § 3-2A-04(b)(5).

In order to waive arbitration, a claimant or defendant must file a written waiver with the Office and serve all other parties to the action. *Id.* § 3-2A-06B. Even if a party waives arbitration, it still must file the expert certificate and report with the Office, or with the court to which the case was transferred if the deadline for filing the certificate and report falls after arbitration has been waived. *Id.*

This Court has consistently held that plaintiff's expert certificate and report requirements under the Maryland HCMCA apply to medical malpractice cases brought in Maryland under the FTCA. *See Davison v. Sinai Hospital of Baltimore, Inc.* (D. Md. 1978), *aff'd* 617 F.2d 361 (4th Cir. 1980), *Hampel v. United States*, 706 F. Supp. 2d 629, 631 (D. Md. 2010). However, with the notable exception of the *Mayo-Parks* case, discussed, *infra*, this Court has never held that the United States is precluded from contesting liability in an FTCA action because of its failure to follow HCMCA's requirements regarding the filing of a defendant's certificate of a qualified expert and accompanying report.

The Willevers argue that this Court must preclude the United States from contesting liability in this action because of its failure to file a certificate and report from a qualified expert as required by HCMCA. The United States argues that precluding it from contesting liability and granting summary judgment in the Willevers' favor would violate the United States' sovereign immunity. Further, the United States argues that the HCMCA only permits, but does not require, this Court to grant summary judgment as to liability in favor of the Willevers. Finally, the United States argues that precluding it from contesting liability would violate Federal Rule of Civil Procedure 55(d).

Neither party addressed the potential conflict between HCMCA's requirement that a defendant submit a certificate and report of a qualified expert and Federal Rules of Civil Procedure 26(a)(2) and 37(c). As discussed below, the Court concludes that HCMCA's requirements concerning defendant's filing of an expert certificate and report directly conflict with Federal Rules of Civil Procedure 26(a)(2), 37(c) and 55(d), the Federal Rules control and HCMCA's defendant's expert disclosure requirements cannot be applied in federal court. Further, even if the Federal Rules and HCMCA do not directly conflict, HCMCA's requirements that defendants file expert certificates and reports are procedural, rather than substantive rules, which this Court does not apply under *Erie R. Co. v. Thompson*, 304 U.S. 64 (1938) and *Hanna v. Plumer*, 380 U.S. 460 (1965).

The Court also concludes that the United States' sovereign immunity prevents it from being subject to HCMCA's certificate requirements. Finally, the Court concludes that even if the United States were required to file an expert certificate and report, HCMCA merely allows, but does not require, the adjudication of liability in the Willevers' favor as a result of the United States' failure to do so. In this case, the Court will not exercise its discretion to preclude the United States from contesting liability.

### III.

It is well settled that where a state law conflicts with a Federal Rule of Civil Procedure, the federal courts must apply the Federal Rule unless that rule exceeds the mandate embodied in the Rules Enabling Act or transgresses constitutional bounds. *Hanna v. Plumer*, 380 U.S. 460, 463-64, 471 (1965); *see Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987); *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611 (4th Cir. 1980) (applying F. R. Civ. P. 15(c) rather than

contrary North Carolina law regarding to relation back of amended pleadings). A Federal Rule and a state law conflict if they are in "direct collision." *Hanna v. Plumer*, 380 U.S. 460, 472 (1965). The "direct collision [ ] language [articulated in *Hanna*] is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n. 4 (1988). Rather, a Federal Rule and a state law are in direct collision if the Federal Rule is "sufficiently broad to cover the point in dispute" and application of the state law compels a different answer to the question in dispute than application of the Federal Rule. *Id.*; *see also Shady Grove*, 130 S. Ct. at 1437 (if Federal Rule of Civil Procedure "answers the question in dispute . . . it governs, [state] law notwithstanding- unless it exceeds statutory authorization or Congress's rulemaking power.")

Though the federal courts are to "interpret[] the Federal Rules [ ] with sensitivity to important state interests and regulatory policies," *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 n. 7 (1996), the Federal Rules are to be given their plain meaning, and are not to be narrowly construed so as to avoid a conflict with state law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9 (1980). The distinction between "substantive" and "procedural" state laws established in *Erie* does not come into play if the Federal Rule and the state law directly collide; if there is a collision, the Federal Rule controls, regardless of how the state law is characterized. *Shady Grove*, 130 S.Ct at 1437 ("We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid."); *Hanna*, 380 U.S. at 470 ("The *Erie* rule has never been invoked to void a Federal Rule.").

In *Hanna v. Plumer*, the Supreme Court held that a Massachusetts law requiring in-hand service of process on an executor or administrator of an estate by any putative creditor conflicted with Federal Rule of Civil Procedure 4(d)(1). *Hanna*, 380 U.S. at 470-71. After determining

that Rule 4(d)(1), allowing for service of process by leaving a summons and complaint with a person of suitable age and discretion at the party's dwelling house or usual place of abode, fell within the limits prescribed by the Rules Enabling Act, the Court concluded that the "clash" between Rule 4 and the Massachusetts law was "unavoidable" because "Rule 4(d)(1) says-implicitly, but with unmistakable clarity-that inhand service is not required in federal courts." *Id.* at 470. Because the state law imposed service requirements above and beyond those imposed by a valid, constitutional Federal Rule of Civil Procedure, the Court held that the state law was in direct collision with the federal law and therefore could not be given effect in the federal courts. *Id.* at 470-471.

By contrast, the Court concluded in *Walker v. Armco Steel Corp.* that there was no direct collision between Federal Rule of Civil Procedure 3 and an Oklahoma statute providing that an action was "commenced" for the purposes of the statute of limitations only upon service of a summons on the defendant, or, if the complaint was filed within the limitations period, and the defendant was served within 60 days of that filing, on the date the complaint was filed. 446 U.S. 740, 752 (1980). The Court found that there was no direct collision because Rule 3, which states that an action is "commenced" by the filing of the complaint, and the Oklahoma statute, because Rule 3 regulated "commencement" of an action only with respect to when various timing requirements imposed by the Federal Rules begin to run, and does not affect the tolling of state statutes of limitation. *Id.* at 750-52. There was thus no conflict between the Oklahoma law, which established a rule for the tolling of that state's statute of limitations, and Rule 3. *Walker*, unlike *Hanna*, involved a Federal Rule that was not so broad as to cover the point in dispute— under what circumstances the statute of limitations was tolled—and therefore the Court

concluded that the state law, which was "substantive" within the meaning of *Erie*, must be applied by the federal courts when sitting in diversity. *Id.* at 750.

The Supreme Court recently added to this complex line of cases in *Shady Grove v. Allstate Insurance Co.*, 130 S.Ct. 1431 (2010). Writing for the majority of a heavily splintered Court,[3] Justice Scalia concluded that a New York law prohibiting class actions to recover penalties or statutory minimum damages was in direct conflict with Federal Rule of Civil Procedure 23, and therefore could not be enforced by the federal courts. *Id.* at 1441-1442. The Court reiterated that *Hanna* and its progeny required the federal courts to apply a Federal Rule of Civil Procedure if it "answers the question in dispute," so long as it does not "exceed[] statutory authorization or Congress's rulemaking power." *Id.* at 1437. The Court defined the "question in dispute" as whether Shady Grove's suit for statutory damages could proceed as a class action, and found a direct collision between Rule 23's answer to that question and the New York statute's answer to that question. *Id.* at 1437-1438. Rule 23 creates a "categorical rule entitling a plaintiff whose suit meets the specified criteria [outlined in that rule] to pursue his claim as a class action." *Id.* at 1437. In imposing additional restrictions on a plaintiff's right to maintain a class action, the New York statute conflicted directly with the plain meaning of Rule 23. *Id.* at 1437-1438. Because the New York statute and Rule 23 answered the same question, "whether a class action may proceed for a given suit," but answered it in different ways, the federal courts were required to apply Rule 23 to the exclusion of the New York statute.

Under *Hanna* and its progeny, HCMCA § 3-2A-04(b)(2)(i) cannot be applied by this Court because it imposes expert certificate and report requirements on defendants in conflict

---

[3] Justice Scalia delivered the opinion of the Court with respect to Parts I and II-A of his opinion only. Chief Justice Roberts, Justice Thomas, Justice Sotomayor, and Justice Stevens joined in Justice Scalia's opinion as to Parts I and II-A, but Justice Stevens wrote a separate concurrence, and did not concur in the remainder of Justice Scalia's opinion.

with Federal Rules of Civil Procedure 26(a)(2), 37(c), and 55(d).  The Fourth Circuit dealt with an analogous collision of a Federal Rule of Civil Procedure and a state statute in *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (1980).  In *Piper Aircraft*, the Fourth Circuit considered whether a North Carolina statute was in direct collision with Federal Rule of Civil Procedure 15(c) where it prohibited the relation back of amended pleadings reflecting changes in legal capacity where the amendment would defeat a limitations bar.[4]  The court concluded that the state statute and Rule 15(c) were in direct collision because the Federal Rule was "quite as broad in scope as the conflicting state rule," and the state statute imposed greater burdens on the relation back of amended pleadings than those imposed by Rule 15(c).  *Id.* at 610-12.  Read together, *Hanna*, *Walker*, *Shady Grove*, and *Piper Aircraft* stand for the proposition that where a state statute imposes greater procedural burdens on a party than does a Federal Rule of Civil Procedure, and the statute and rule govern the same issue, the state statute cannot be applied in federal court.

Federal Rule of Civil Procedure 26(a)(2) governs both the content and the timing of the expert disclosures a defendant is required to make during the course of litigation in federal court.  Rule 26(a)(2) requires a party to disclose the identity of any expert witnesses it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705,[5] and "*unless otherwise stipulated or ordered by the court*," to simultaneously provide an expert report from any "witness [ ] retained or specially employed to provide expert testimony in the case."  F. R. Civ. P. 26(a)(2)(A), (B) (emphasis added).  Unless HCMCA, the Rule does not affirmatively compel

---

[4] In *Piper Aircraft*, plaintiff lacked the legal capacity to maintain the action at the time the complaint was filed because he had not yet been appointed as ancillary administrator of the estate on behalf of which he sued.  Having attained that legal capacity only after the statute of limitations had run, he sought to amend the complaint to reflect his status as ancillary administrator, and to have that legal designation relate back to the date of the filing of the complaint.  *Id.* at 609-10.

[5] These Rules collectively govern the introduction of expert testimony on matters within the expert's "scientific, technical, or other specialized knowledge . . . "  F. R. Evid. 702 (testimony by experts); F. R. Evid. 703 (opinion testimony by experts); F. R. Evid. 705 (disclosure of facts or data underlying expert opinion).

a defendant to hire an expert to support its position in certain classes of cases, such as medical malpractice cases.

The expert report provided pursuant to Rule 26(a)(2) must detail the opinions of the witness, the information considered by the witness in forming his opinions, the exhibits he will use to support his opinions at trial, and information regarding his experience and compensation for serving as an expert. F. R. Civ. P. 26(a)(2)(B). By contrast, expert reports under HCMCA need not necessarily contain such detailed information; all that is required to be contained in a HCMCA expert report is an "expla[nation of] how or why the physician failed or did not fail to meet the standard of care and [ ] some details supporting the certificate of qualified expert." *Walzer v. Osborne*, 395 Md. 563, 583 (Md. 2006). In this way, Rule 26(a)(2) actually imposes more specific expert disclosure requirements than those imposed under HCMCA's competing disclosure scheme.

Rule 26(a)(2) also affords the trial court discretion to determine *when* a party must make expert disclosures to the other party. F. R. Civ. P. 26(a)(2)(C). The rule provides that "[a] party must make these disclosures *at the times and in the sequence that the court orders*." *Id.* (emphasis added). Absent a contrary order by the court, expert disclosures must be made at least 90 days prior to trial, or, if the expert testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure." *Id.* Rule 26(a)(2) clearly seeks to answer the question of *what* the United States must disclose to the Willevers regarding its experts' opinions as to whether NNMC employees breached standards of care, and whether any breach caused Captain Willever's death. Rule 26(a)(2) also answers the question of *when* the United States must disclose this information.

HCMCA § 3-2A-04(b)(2)(i) seeks to answer the same question in a different way. By imposing more stringent requirements with respect to the United States' obligation to disclose the opinions of its experts, HCMCA unavoidably collides with Federal Rule 26(a)(2). Rather than allowing the trial court to exercise discretion as to whether an expert report must be provided to the opposing party, the HCMCA mandates that defendant provide an expert report to plaintiff "attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i). Similarly, Federal Rule 26(a)(2) gives the trial court discretion to determine when the defendant must disclose its experts' opinions and the facts upon which those opinions are based. F. R. Civ. P. 26(a)(2)(C). HCMCA, by contrast, requires that a defendant provide an expert report within 120 days of being served with plaintiff's certificate of a qualified expert. HCMCA's 120 day requirement cannot be given effect without abrogating the essential discretion afforded the trial court to set deadlines regarding defendant's expert disclosures afforded by Rule 26(a)(2)(C).

Perhaps the most troubling "direct collision" between HCMCA's defendant's certificate and report requirements and the Federal Rules lies in the different sanctions which may be imposed if a defendant fails to timely disclose the opinions of its experts. Pursuant to HCMCA, if a defendant fails to provide a certificate and report of an expert attesting to compliance with standards of care, or attesting that departures from standards of care were not the proximate cause of the alleged injury, "a claim . . . may be adjudicated in favor of the claimant or plaintiff on the issue of liability." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i). By contrast, Federal Rule of Civil Procedure 37(c) provides that if a party fails to timely disclose expert opinions, the court may preclude that party from using that witness at a hearing or trial, unless

15

the failure to disclose "was substantially justified or is harmless." F. R. Civ. P. 37(c). The trial court has both the discretion to excuse a failure to timely disclose expert opinions and to "impose other appropriate sanctions." *Id.* However, if the trial court seeks to impose sanctions more severe than precluding the expert witness from testifying, the court must give the non-compliant party an opportunity to be heard. F. R. Civ. P. 37(c)(1). Unlike HCMCA, Rule 37(c) only allows the trial court to preclude a "disobedient party from supporting or opposing designated claims or defenses" upon motion of another party, and only after the "disobedient party" has been given an opportunity to be heard. F. R. Civ. P. 37(c)(1)(C). In contrast to Rule 37(c), HCMCA allows the court to preclude a defendant from contesting liability if a timely expert certificate and report is not provided, even without giving the defendant an opportunity to be heard, and may apparently do so *sua sponte*. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i).

*Hanna*, *Walker*, *Shady Grove*, and *Piper Aircraft* dictate that the dispositive inquiry is whether the Federal Rules are sufficiently broad to control the question in dispute. In this case, the Court concludes that Federal Rules of Civil Procedure 26(a)(2) and 37(c) are sufficiently broad to control the question in dispute. They control the question of *what* disclosures the United States must make to the Willevers—and *when*—concerning the opinions of its experts as to whether NNMC employees breached standards of care and whether this was the proximate cause of Captain Willever's death. Because the Federal Rules of Civil Procedure answer the question in dispute, they govern, notwithstanding the conflicting dictates of HCMCA unless the Rules violate the Constitution or the Rules Enabling Act. *Shady Grove*, 130 S.Ct. 130 S. Ct. at 1437.

There is no doubt that Rules 26(a)(2) and 37(c) comply with the mandates of both the Rules Enabling Act and the Constitution. A Federal Rule of Civil Procedure is valid under the Rules Enabling Act if it prescribes "the practice and procedure of the district courts of the United States" and does not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The *Hanna* Court held that a Federal Rule of Civil Procedure regulates "the practice and procedure of the district courts" if the "rule really regulates procedures,-the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Hanna*, 380 U.S. at 464 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). Regulating the content and timing of a defendant's disclosures of expert opinions is clearly a "regulation of the judicial process" rather than a rule governing substantive rights. As such, regulation of the discovery process is governed by the Federal Rules, not state discovery procedures. *See* 8 Wright & Miller, Federal Practice and Procedure § 2005 (except for privilege and Rule 69 issues, federal discovery is wholly governed by Federal Rules of Civil Procedure, and "state discovery practices are irrelevant."). Federal Rules of Civil Procedure 26(a)(2) and 37(c) are unquestionably constitutional, and accordingly, they govern the instant dispute. Having concluded that there is a direct collision between these Rules and HCMCA's requirements that a defendant file an expert certificate and report within 120 days of being served plaintiff's certificate, the Federal Rules must govern, and the United States need only comply with the mandates of this Court's scheduling orders governing expert disclosures under Rule 26. ECF Nos. 7 & 13. As previously noted, the parties do not dispute that the United States complied with all of this Court's scheduling orders.

Similarly, in this case, there is a clear conflict between Federal Rule of Civil Procedure 55(d) and HCMCA as applied to the United States. Rule 55(d) prohibits entry of a default

judgment against the United States unless "the claimant establishes a claim or right to relief by evidence that satisfies the court." The United States has contested liability and the parties' experts disagree on whether standards of care were met with regard to Captain Willever's care. The United States argues that denying it the opportunity to contest liability would therefore result in entry of judgment in the Willevers' favor even though they have not proven their entitlement to relief with sufficient evidence. The Court agrees.

Precluding the United States from contesting liability would result in a judgment against the United States before the Court has weighed the parties' competing evidence on the issues of standards of care and causation. The Willevers have not yet presented to this Court *any* evidence that NNMC employees were negligent, and that their negligence caused Captain Willever's death. Because Rule 55 is broad enough to answer the question of when a default judgment may be entered against the United States, HCMCA may not be applied by the federal courts when its application is in direct collision with the dictates of the Federal Rule. As with Rules 26(a)(2) and 37(c), there is no dispute that Rule 55(d) is both a rule which "regulat[es] the judicial process" by providing for the circumstances under which a default judgment can be entered, and a clearly constitutional one at that.

## IV.

Even if this Court did not find HCMCA's defendant's expert certificate and report requirements to be in direct collision with the Federal Rules of Civil Procedure, the Court would still refuse to apply HCMCA's requirements regarding defendant's expert disclosures in this case because defendant's expert certificate and report requirements under HCMCA are procedural, not substantive, rules. Federal courts apply state substantive law and federal procedural law. *Hanna*, 380 U.S. at 466. In *Hanna v. Plumer*, the Supreme Court clarified that there is no

talismanic test for determining whether a state rule is "substantive" or "procedural" within the meaning of *Erie*. *Id.* at 466-467. Rather, in distinguishing procedural from substantive state rules, the Court must look to the twin aims of the *Erie* doctrine: preventing substantial differences in the "character or result of litigation" brought in federal court as compared to litigation brought in state court, and preventing forum shopping. *Id.* at 467.

It is clear that a federal court's refusal to apply HCMCA's requirement that defendants file an expert certificate and report will neither "make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State," nor will it encourage forum shopping. *Id.* at 468, n. 9. In sharp contrast to HCMCA's requirement that a *plaintiff* file a certificate and report of a qualified expert, defendant's certificate and report requirements are not conditions precedent to filing a suit.

The Maryland courts have held that failure to satisfy a condition precedent completely bars a putative suit, regardless of whether a defendant has suffered prejudice. *See Carroll v. Konits*, 929 A.2d 19, 22 (Md. 2007) (filing of plaintiff's expert certificate is a condition precedent and case must be dismissed if condition precedent is not met), *see also Williams v. Maryland Dept. of Human Resources*, 764 A.2d 351, 364 (Md. App. 2000) (failure to provide State of Maryland with notice of claim, a condition precedent to maintaining an action under the Maryland Tort Claims Act, bars suit). Conditions precedent are not waivable because they are so fundamental to a plaintiff's right to bring a cause of action in the first instance. *Carroll*, 929 A.2d at 28 n. 12. If a plaintiff fails to comply with HCMCA's expert certificate and report requirements, his case *must* be dismissed without prejudice. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(1)(i).

This Court has analyzed *plaintiff's* certificate and expert report requirements under *Hanna* and found those requirements to be "substantive." *See Davison v. Sinai Hospital of Baltimore, Inc.* (D. Md. 1978), *aff'd* 617 F.2d 361 (4th Cir. 1980). In analyzing these requirements under *Hanna*, the Court reasoned "that the character of litigation would differ drastically if plaintiffs in Maryland state courts were required to submit their claims to an arbitration panel prior to bringing suit and plaintiffs in this court were not." *Id.* at 780. This is so because a plaintiff *cannot litigate his case at all* if he does not comply with HCMCA. If the federal courts failed to enforce this condition precedent, a federal court medical malpractice case would differ markedly from a Maryland state court medical malpractice case. In federal court, a plaintiff could initiate a medical malpractice action even if no expert would support claims that medical malpractice had occurred, whereas in state court that plaintiff would never even be allowed to proceed with an action.

By contrast, the failure to apply HCMCA's requirements as to *defendant's* certificate and report requirements would not result in *material* differences in the character of state court and federal court litigation. Non-application of HCMCA's defendant's certificate and report requirements in federal court will not deprive plaintiffs of information concerning the opinions of defendant's experts. As discussed, *supra*, the opinions of defendant's experts must be disclosed to plaintiffs either by operation of Federal Rule 26(a)(2) in federal court, unless otherwise stipulated or ordered by the court, and by operation of HCMCA in state court. The main difference is that the compulsory 120 day filing deadline imposed by HCMCA may result in state court plaintiffs receiving this information earlier than federal court plaintiffs. But such a difference cannot be said to significantly and materially alter the character of litigation.

There is also no reason to believe that the non-application of HCMCA's defendant's certificate and report requirements will affect the outcome of medical malpractice cases depending on whether they are brought in state or federal court. A defendant who lacks any meritorious defense will be found liable in federal court or Maryland state court, though possibly at different procedural stages. In federal court this will likely happen at the summary judgment stage, whereas in state court this *might* happen earlier if a defendant failed to file a certificate and report of a qualified expert *and* the court determined it was appropriate to exercise its discretion to preclude the defendant from contesting liability. The court is not *required* to adjudicate liability in plaintiff's favor if a defendant fails to file a certificate and report of a qualified expert, *see* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i), it is merely permitted to do so. The outcome of medical malpractice cases will not differ markedly between state and federal courts; only the procedural timing of adjudication of defendant's liability may differ.

Nor is there any reason to believe that forum shopping will result from a federal court's refusal to apply HCMCA's expert certificate and report requirements relating to defendants. As discussed, *supra*, a defendant must reveal the identity and opinions of his experts in federal court pursuant to Rule 26(c), unless otherwise stipulated or ordered by the court. F. R. Civ. P. 26(a)(2). Though the *timing* of defendant's expert disclosures may differ between Maryland state and federal courts, the medical malpractice defendant will eventually be required to disclose to a plaintiff the defense expert's opinions and their foundations. Few plaintiffs would deem this procedural difference a compelling reason to select one forum over another. Further, any perceived advantage accruing to plaintiff as a result of application of HCMCA's defendant's certificate and report requirement in state court may be offset by Rule 26(a)(2)'s requirement that

expert reports contain greater detail than that required under HCMCA. Compare *Walzer v. Osborne*, 395 Md. 563, 583 (Md. 2006) with F. R. Civ. P. 26(a)(2)(B).

Under the test articulated in *Hanna*, HCMCA's requirements that defendants in a medical malpractice case file an expert certificate and report are properly characterized as "procedural." Because "federal courts are to apply state substantive law and federal procedural law," *Hanna*, 380 U.S. at 465, this Court will not apply Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i).

In *Mayo-Parks v. United States*, another judge of this Court concluded in a three page opinion that the United States was precluded from contesting liability in an FTCA medical malpractice wrongful death and survival action after it failed to file a defendant's certificate and report of a qualified expert. 384 F. Supp. 2d 818, 820-21 (D. Md. 2005). This Court has carefully reviewed the opinion as well as the original court file in the *Mayo-Parks* case, and concludes both that the holding in that case was dictum and that the reasoning was unsound.

First, the United States *did not contest liability* in *Mayo-Parks*. It conceded both medical negligence and that such negligence resulted in the death of the decedent. *See Mayo-Parks v. United States*, 03-cv-3497-WDQ, ECF No. 18, p. 2. The only dispute raised by the government was "to what extent damages are due the plaintiffs, an issue that embraces, *inter alia*, the extent of any mental or physical deterioration experienced by the decedent and the interval of time when such occurred." *Id.* In the context of death cases, this is clearly a damages issue; it relates to the conscious pain and suffering of the decedent between the time of the medical negligence and his resulting death. It is a quintessential damages question that is wholly unrelated to the issues of negligence and causation that are at the core of Maryland's certificate and report requirement. Accordingly, the court concludes that the *Mayo-Parks* opinion was classic dictum.

Second, even if it were not dictum, the reasoning of *Mayo-Parks* is fundamentally flawed. The opinion in that case concluded that "HCMCA 'has substantive aspects which, under *Erie*, must be honored by federal courts,'" citing *Rowland v. Patterson*, 882 F.2d 97 (4th Cir. 1989). The opinion did not state *which* provisions of HCMCA are substantive and this is not surprising because the quote from *Rowland* was incomplete and inaccurate. The complete text of the relevant portion of *Rowland* is as follows: "There is no *Erie* problem here. It is true that Maryland's statutory requirement of arbitration as a precondition to legal action has substantive aspects which, under Erie, must be honored by federal courts." *Rowland*, 882 F.2d at 99. From an examination of the full text of the *Rowland* opinion it is clear that it was not referring to the entire HCMCA, as suggested by language of the *Mayo-Parks* opinion, but rather to the preconditions to litigation under the HCMCA. As this court has already concluded, the plaintiff's certificate and report requirements are wholly different than the defendant's; the former are condition precedents to the right to sue and are substantive, while the latter are procedural and, under *Erie*, are governed by federal law.

The *Mayo-Parks* opinion did not address the issue of whether HCMCA's requirement that defendants file an expert certificate and report conflicted with the Federal Rules of Civil Procedure or whether the sovereign immunity of the United States would be implicated in applying it in such a way as to preclude the United States from disputing liability. Nor did the opinion in *Mayo-Parks* analyze how failure to enforce these provisions in federal court would result in material differences in the "character or result of litigation" depending on whether a suit was brought in federal or state court, nor did it explain how such a rule would lead to forum shopping. This Court therefore declines to apply the holding of that case here.

## V.

Precluding the United States from contesting liability in this action because it failed to comply with the requirements of Maryland's HCMCA would also be incompatible with the plain language and purpose of 28 U.S.C. § 1346(b)(1), which dictates the scope of the United States' waiver of its sovereign immunity. Section 1346(b)(1) grants the federal district courts "*exclusive jurisdiction* of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employees of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Medical malpractice actions against the United States under the FTCA are claims that fall within Section 1346(b)(1)'s grant of exclusive jurisdiction to the district courts. *See* 28 U.S.C. § 2674 ("[T]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ").

If Maryland could require the United States to participate in mandatory arbitration before a state executive agency as a condition precedent to defending an FTCA action in this Court, Section 1348(b) would be completely undermined. Section 1346(b)(1) shows a clear congressional intent to limit adjudication of FTCA medical malpractice claims to the federal courts. Subjecting the United States to HCMCA would therefore exceed the scope of the United States' waiver of sovereign immunity.

An analysis of the HCMCA arbitration process makes clear its incompatibility with Section 1346(b)(1). The HCMCA compels a defendant to submit to arbitration under the

jurisdiction of the Health Care Alternative Dispute Resolution Office, which is a unit within Maryland's Executive Department. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-03. The Office is headed by a Director appointed by Maryland's Governor with the advice and consent of the Maryland Senate. *Id.* Any person with a claim against a health care provider for damages due to a medical injury is required to file a claim with the Director and pay a fee. *Id.* §§ 3-2A-03A, 3-2A-04. The healthcare provider is required to "file a response with the Director and serve a copy on the claimant and all other health care providers named therein within the time provided in the Maryland Rules for filing a responsive pleading to a complaint." *Id.* § 3-2A-04(a)(1)(iii). Even if a defendant waives arbitration, and the case is transferred to a district court, it must still file and serve its waiver of arbitration on the other parties, and still must submit an expert certificate and report to the Office or the transferee court.[6] If it does not, it may be precluded from contesting liability. There is no evidence that Congress, in enacting 28 U.S.C. § 1346(b)(1), intended to subject the United States to state-administered, mandatory arbitration proceedings as a precondition to defending an FTCA action in federal court.

The fact that Congress created a mandatory *federal* administrative claims procedure to assess tort claims under the FTCA further undermines any argument that Congress intended to subject the United States to a state administrative claims procedure in FTCA cases. Pursuant to 28 U.S.C. § 2401(b ), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Further,

---

[6] Even if this Court were to conclude that these were modest burdens to place on the United States, *any* burden imposed on the United States by a state statute in the absence of its consent is invalid. The size of the burden is irrelevant. *See TransAmerica Assurance Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 262 (6th Cir. 2007) ("Although a single instance of compelling the government to file paperwork might seem trifling . . . compulsion itself is the vice that implicates federal sovereign immunity.")

"[a]n action *shall not be instituted* upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).  These statutes establish that engaging in the federal administrative claims procedure is a condition precedent for plaintiff to bring an FTCA action against the United States.  The federal claims procedure, unlike Maryland's, does not require the *United States* to file documentation supporting its assertion that its employees were not negligent.  It is unreasonable to assume the United States intended to subject itself to an administrative claims procedure before a Maryland Executive board in which it must support its defense with expert certificates and reports, when it did not establish similar requirements for its defense in the federal administrative claims process.

Applying HCMCA to the United States would essentially deprive the federal courts of their exclusive power to adjudicate the merits of FTCA medical malpractice actions by potentially precluding the United States from contesting liability if it fails to comply with state-imposed procedural requirements.  This result cannot be squared with the limited waiver of sovereign immunity contained in 28 U.S.C. § 1346(b)(1).  Because waivers of sovereign immunity are to be narrowly construed, *Orleans*, 425 U.S. at 813-14, Section 1346(b)(1) cannot

be interpreted as the United States' acquiescence to being subject to a mandatory, state-administered arbitration as a precondition to defending an FTCA suit in this Court.[7]

## VI.

Application of HCMCA's requirements to preclude the United States from contesting liability is inconsistent with *Hanna* and its progeny, is not compelled by the *Erie* doctrine, and would impermissibly exceed the scope of the United States' waiver of sovereign immunity. Even if there were not three independent grounds on which to deny the Willevers' motion, the Court would nevertheless decline to exercise its discretion to preclude the United States from contesting liability in this case.

The plain language of the HCMCA allows, but does not require, this Court to preclude a defendant from contesting liability as a result of its failure to timely file a certificate and report of a qualified expert. The HCMCA says the court *may*, not that the court *shall*, adjudicate a malpractice claim in favor of a plaintiff when the defendant fails to file the expert certificate and report. The statute states:

> A claim or action filed after July 1, 1986, *may* be adjudicated in favor of the claimant or plaintiff on the issue of liability, if the defendant disputes liability and fails to file a certificate of a qualified expert attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury, within 120 days from the date the claimant or plaintiff served the certificate of a qualified expert . . .

---

[7] The Sixth Circuit recently grappled with a similar issue. In *Premo v. United States*, the Sixth Circuit held that the United States could not be subject to a state's no-fault automobile accident statute because the statute imposed absolute liability, and the scope of the United States' waiver of sovereign immunity under the FTCA did not extend to being held liable in the absence of a finding that employees of the United States had acted negligently or wrongfully. *Premo*, 599 F. 3d 540, 549 (6th Cir. 2010). The Court held that the FTCA's express language did not allow for imposition of liability absent a finding of liability of "misfeasance or nonfeasance." *Id. Premo* stands for the proposition that where application of a state statute would essentially allow for the imposition of liability in the absence of a finding of negligence, it cannot be applied as to the United States. Here, the Court similarly concludes that the United States cannot be found liable for Captain Willever's death until the Willevers prove that his death was the result of the negligence of NNMC employees.

Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(b)(2)(i) (emphasis added).

"The word ['may'] bears its ordinary significance of permission unless the context or the purpose of the statute shows that it is meant to be imperative." *Fleishman v. Kremer*, 179 Md. 536, 541 (Md. 1941) (quoting *Farmers' & Merchs.' Bank v. Fed. Reserve Bank*, 262 U.S. 649, 662). Therefore the plain language of the statute permits, but does not require, the Court to adjudicate a medical malpractice claim in favor of a plaintiff when a defendant fails to file an expert certificate and report.[8]

The Willevers argue that a permissive interpretation of § 3-2A-04(b)(2)(i) ignores the fact that the HCMCA employs the word "shall" more than four times in stating a defendant's obligation to file expert certificates and reports. Pls.' Reply, at 11-13. The Court disagrees. In using the word "shall" elsewhere in Section 3-2A-04, the legislature demonstrated its desire to make certain provisions mandatory, and its use of the word "may" in the above section indicates that the legislature did *not* intend to make adjudication in favor of the plaintiff mandatory where the defendant failed to comply with HCMCA's certificate requirements. While the use of the word "shall" in sections referring to defendant's expert certificate and report filing requirements demonstrates the legislature's intent to make the filing of these documents mandatory, its failure to use the word "shall" in Section 3-2A-04(b)(2)(i) shows that it did not intend to make the *sanction* of precluding a defendant from contesting liability mandatory. The Court will not assume that the legislature meant to make a sanction mandatory when the statute's plain language counsels against such a reading.

---

[8] The Court of Appeals of Maryland has suggested in dictum that a defendant who fails to file an expert certificate and report must be precluded from contesting liability. *See Witte v. Azarian*, 801 A.2d 160, 169 (Md. 2002) ("[I]n the absence of a countervailing certificate on behalf of the defendant, the defendant loses the right to contest liability.") This Court respectfully disagrees with that interpretation of the statute, which is, in any event, dictum.

Where, as in this case, there is a genuine dispute as to whether standards of care were met and whether any breach of these standards caused Captain Willever's death, it is inappropriate to preclude the United States from contesting liability because of a minor procedural default. This is especially true because the United States timely disclosed its experts' opinions consistent with this Court's scheduling order.

## **CONCLUSION**

For the reasons articulated herein, the Willevers' motion for partial summary judgment will be denied by separate order.


<u>March 4, 2011</u>                        <u>            /s/            </u>
Date                                    Roger W. Titus
                                        United States District Judge